IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2002

## WILLIAM K. ROBISON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hickman County**
**No. 01-5055C-I      Timothy L. Easter, Judge**

---

**No. M2002-01928-CCA-R3-PC - Filed April 30, 2003**

---

The Appellant, William K. Robison, appeals the denial of his petition for post-conviction relief by the Hickman County Circuit Court. Robison is currently serving an effective sentence of fifteen years as a result of his guilty pleas to aggravated assault, setting fire to personal property, escape and theft over $10,000. On appeal, Robinson argues the post-conviction court erred in finding that: (1) he received effective assistance of counsel and (2) his guilty pleas were knowingly and voluntarily entered. Finding no error, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Jeff Preston Burks, Franklin, Tennessee, for the Appellant, William K. Robison.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Christine M. Lapps, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Michael J. Fahey, III, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Procedural Background

The Hickman County Grand Jury returned a twelve count indictment against the Appellant in February 2001, charging: (1) two counts of especially aggravated kidnaping; (2) two counts of aggravated burglary; (3) two counts of aggravated assault; (4) three counts of setting fire to personal property; (5) auto burglary; and (6) two counts of theft under $500. These charges arose from the Appellant's acts of burning a pick-up truck belonging to Penny Perry and subsequently attacking Ms. Perry and her daughter with a baseball bat in an altercation on December 4, 2000. While in jail for these charges, the Appellant escaped and stole a vehicle. As a result of this conduct, the Appellant

was indicted for the additional crimes of: (1) escape; (2) burglary; (3) theft over $10,000; (4) vandalism under $500; and (5) theft under $500.

On June 12, 2001, the Appellant entered a negotiated guilty plea to: (1) two counts of aggravated assault, (2) setting fire to personal property; (3) escape; and (4) theft over $10,000. All other counts of both indictments were dismissed. Pursuant to the plea agreement, the Appellant received a total effective sentence of fifteen years in the Department of Correction.

On August 29, 2001, the Appellant filed a *pro se* petition for post-conviction relief alleging (1) that he was denied effective assistance of counsel and (2) that his guilty pleas were not knowingly and voluntarily entered. Counsel was subsequently appointed, and an amended petition was filed on October 17, 2001.

At the February 22, 2002, evidentiary hearing, the Appellant testified that he had only a tenth grade education and that his experience with the criminal justice system was limited. With regard to his counsel's representation, he asserted that counsel had failed to review his rights with him, failed to explain the preliminary hearing and the discovery processes, and failed to discuss any possible defenses with him. The Appellant also asserted that trial counsel had met with him only twice and provided him with a minimum of information about the offenses for which he was charged. He further asserted that trial counsel failed to investigate and interview the list of potential alibi witnesses he had provided.

The Appellant testified that during his jail incarceration, he was taken to the Middle Tennessee Mental Health Institute for approximately ten days following a suicide attempt. He claimed that after his return to jail, he was required to take several types of medication and things became "fuzzy." He testified that he was medicated during the guilty plea submission hearing, and that this affected his ability to understand what was taking place. The Appellant stated that trial counsel instructed him to answer "yes" to any question the trial court asked of him, and that she would explain anything he did not understand after the hearing. The Appellant stated that when he spoke with trial counsel again after the judge advised him of various rights, she informed him that it was "too late" to withdraw his pleas and that he had to sign the papers. He related that he returned to the courtroom to enter his pleas, but claimed he felt "fuzzy" and was fading "in and out."

Trial counsel's testimony materially conflicted with that of the Appellant's. Counsel testified that she had approximately twelve years experience as an assistant public defender and that she discussed the Appellant's rights with him at their initial meeting. She testified that the Appellant appeared to understand his rights and the trial process. In addition, she testified that, after receiving a call from the Appellant's grandmother about his mental health, she proceeded to have the Appellant evaluated for competency at the local mental health center. The mental health center's evaluation concluded that neither a defense of insanity nor a diminished capacity argument could be supported at trial. Trial counsel testified that she discussed these evaluation results with the Appellant. Counsel further stated that she had investigated and attempted to interview the witnesses provided to her by the Appellant. She concluded that the potential witnesses posed a serious

problem for the defense and were of no value in establishing an alibi as suggested by the Appellant. Trial counsel stated that it was her usual practice to review all charges, the elements of each offense charged and potential sentence, including maximums and minimums, with all defendants, and that her notes indicated she had followed this practice with the Appellant. Trial counsel's notes also indicated that she had met with the Appellant six times during the course of the representation.

The post-conviction court denied the petition on April 18, 2002.

**Analysis**

**A. Ineffective Assistance of Counsel**

It is the Appellant's burden to establish the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997 and Supp. 2001).

To succeed on a challenge of ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, the prejudice prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). To satisfy this prong, the Appellant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*.

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458. Upon *de novo* review, accompanied by a presumption that the post-conviction court's findings are correct, this court must determine whether the Appellant received the effective assistance of counsel.

Accrediting trial counsel's testimony and resolving all factual disputes in counsel's favor, the post-conviction court concluded that counsel's performance was clearly within the range of competence required for a trial attorney, and that deficient performance was not established. The Appellant bears the burden of showing that the evidence preponderates against the post-conviction court's finding that he received the effective assistance of counsel; that burden has not been met in the case before us. Upon review, with the presumption of correctness, we find that the record before

us clearly supports the post-conviction court's finding. Trial counsel testified that she met with the Appellant six times, explained the offenses he was charged with and the criminal process, conducted a preliminary hearing, pursued a mental illness defense, pursued an alibi defense, and fully explained the plea process to the Appellant.

We further note that when a petitioner contends that trial counsel failed to investigate or present a witness in support of his defense, the Appellant should present that evidence or witness at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The Appellant failed to produce any evidence or witnesses at the hearing to support his theories; thus, we cannot infer that any such evidence or testimony would have affected the outcome of this case. Absent any evidence from the Appellant to preponderate otherwise, we find that trial counsel's performance was not deficient and did not affect the Appellant's decision to plead guilty. This issue is without merit.

## B. Guilty Plea

The Appellant also asserts that his guilty pleas were not knowingly and voluntarily entered, because he was on medication and because trial counsel failed to inform him of the specific elements of the offenses with which he was charged. When an accused chooses to plead guilty, the plea must be entered voluntarily and knowingly in order to pass constitutional muster. *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969). In evaluating the knowing and voluntary nature of a guilty plea, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In making this determination, the reviewing court must look to all relevant circumstances that existed when the plea was entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). Indeed, a "court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with the criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

With regard to this issue, the following findings by the post-conviction court are noted:

This Court specifically rejects and discounts the Petitioner's claim that he was not fully advised of the consequences of entering his plea. This claim is simply not supported by the record.

The transcript of the Settlement Agreement . . . clearly shows the Trial Court discusses "voluntariness of plea" with the Petitioner on at least six separate

-4-

occasions. . . . The record reflects, and this Court finds, that the Petitioner was fully advised of his rights, and he understood them and voluntarily waived them.

Additionally, the signed Petition for Waiver of Trial By Jury and Request For Acceptance of Plea of Guilty . . . clearly demonstrate that the Petitioner fully understood the nature of his actions, and such actions (pleading guilty) were voluntary and not the result of force.

 . . . There is absolutely no proof that the Petitioner was incompetent or otherwise not in control of his mental faculties at the time he entered his plea.

With the required criteria considered, we conclude that the record amply supports the post-conviction court's findings that the Appellant did knowingly and voluntarily enter his guilty pleas. The Appellant has presented no evidence to the contrary. While the Appellant testified that he had only completed the tenth grade and had limited exposure to the criminal court process, the record clearly establishes that both trial counsel and the trial court made great efforts to adequately explain the process to him. The transcript of the guilty plea submission hearing supports the fact that the trial court took measures to ensure that the Appellant was aware of the charges against him and the rights he was waiving. There was no evidence to support the Appellant's claim that he was on medication, making him "fuzzy" and unaware of the consequences of his actions, other than his own self-serving testimony at the post-conviction hearing. Indeed, this testimony is contradicted by the Appellant's statement at the guilty plea hearing that he was not on medication. The Appellant was facing numerous serious charges, and proceeded to hamper his defense by escaping from jail. Trial counsel negotiated a deal that was in the Appellant's best interest given the strength of the State's case, which included eyewitnesses to the crime. We find that the Appellant's pleas were entered voluntarily and knowingly and with full awareness of his constitutional rights.

## CONCLUSION

For the foregoing reasons, we conclude that the Appellant received effective assistance of counsel, and that his guilty pleas were knowingly and voluntarily entered. Accordingly, the judgment of the Hickman County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE